KENNETH ROYCE BOYKIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Boykin v. Commissioner
Docket No. 24044-82.
United States Tax Court
T.C. Memo 1984-297; 1984 Tax Ct. Memo LEXIS 377; 48 T.C.M. (CCH) 267; T.C.M. (RIA) 84297; June 6, 1984. Kenneth Royce Boykin, pro se. Sara Dalton, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax and additions to tax: Addition to Tax
Section 6653(a)
Year
Deficiency
I.R.C. 1954
1979
$2,701.19
$148.75
1980
3,120.01
156.00
After taking into account certain concessions, the issues remaining for decision are as follows: (1) Whether petitioner's correct filing status for 1979 and 1980 is married, filing jointly, as claimed on his returns, or single, head of household, as determined in the notice of deficiency; (2) Whether petitioner is entitled to a dependency exemption deduction for *379 his former wife, Paula Boykin, in 1979; [1]
(3) Whether petitioner is entitled to employee business expense deductions in 1979 and 1980 in the amounts of $7,883.65 and $7,082, respectively; and (4) Whether any part of petitioner's underpayments of tax for 1979 and 1980 was due to negligence or intentional disregard of the revenue laws within the meaning of section 6653(a). [2]
1. The Filing Status Issue
Petitioner was a legal resident of Texas when he filed his petition. He and Paula Boykin (Paula) were married in 1960 and were divorced on February 19, 1979. Nonetheless, after their divorce, they continued to live together through 1980. They discussed remarriage, but Paula declined to remarry petitioner until their controversy with the Internal Revenue Service was settled. In the joint income tax return filed by petitioner and Paula for 1979, *380 they reported Paula's wages of $4,465.31. In determining the deficiency for that year on the ground, in part, that petitioner was not eligible to file a joint return, respondent reduced the reported taxable wages by that amount. The joint return for 1980 includes only petitioner's wages. Section 1 imposes a tax on the taxable income of every "married individual," as defined in section 143. That latter section provides that the "determination of whether an individual is married shall be made as of the close of his taxable year." The section further provides that an "individual legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered married." Because petitioner was divorced in February 1979 and did not remarry prior to the close of 1980, he was not a "married individual" within the meaning of section 1 during 1979 and 1980 even though he and Paula lived together throughout those years. Section 6013 permits only a "husband and wife" to "make a single return jointly." We are, therefore, compelled to hold that petitioner was not entitled to file a joint return with Paula for 1979 and 1980. [3] Petitioner's and Paula's two children *381 continued to live with them through 1979 and 1980; we note that the notice of deficiency computes the deficiency by use of the more favorable "head of household" rates prescribed by section 1(b).
2. Dependency Exemption for Paula
Respondent has agreed, as noted in footnote 1, supra, that petitioner is entitled to a dependency exemption deduction for Paula for 1980. A statutory provision, however, expressly disqualifies her as a dependent for 1979. Section 152(a) sets forth the general definition of the term "dependent" by listing individuals, over half of whose support is received from the taxpayer, who may qualify as dependents and includes paragraph *382 (9) which is as follows: (9) An individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 143, of the taxpayer) who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household. Thus, because petitioner and Paula were husband and wife in 1979 until their divorce in February, she does not qualify as petitioner's dependent. [4]
3. Employee Business Expenses
During 1977 through 1983, with the exception of a brief period in 1977, petitioner worked in the Houston area for H.B. Zachary Company as a heavy equipment operator on construction jobs. His places of employment, all in Texas, and the dates thereof are as follows: April 27, 1977, through
November 23, 1977
Deer Park, NPCC plant
February 27, 1978 through
March 15, 1979
Deer Park, USI plant
March 20, 1979 through
January 10, 1980
Channelview, Arco plant
January 14, 1980 through
March 27, 1980
Channelview, Arco plant
April 14, 1980 through
July 30, 1980
Freeport, Chintech project
August 4, 1980 through
May 5, 1983
Pasedena, Tenneco plant
*383 Throughout this period, petitioner resided during the work week in the greater Houston area in rented quarters. On Thursday night of weekends, he travelled approximately 150 miles to Huntington, Texas, where he maintained a home for Paula and their two sons. He then returned to the Houston area Sunday evenings. On his 1979 and 1980 income tax returns, petitioner claimed deductions for the cost of his transportation between Huntington and the Houston area and for the cost of his meals and lodging in the Houston area. His deductions totalled $7,883.65 and $7,082 in 1979 and 1980, respectively. As indicated in the foregoing table, petitioner worked steadily during 1979 and 1980 for H. B. Zachary. When petitioner's employment at one of the worksites listed above was completed, it was necessary for him to apply for a job at the next one. Nonetheless, it was common practice for workers to move from one H. B. Zachary job to another. Once he had proved to be an adequate worker, his chance of reemployment at a subsequent H. B. Zachary jobsite was greater. Eliminating weekends, the foregoing schedule indicates that petitioner held a job with H. B. Zachary for all except about 2 *384 weeks during the 2-year period in controversy. In fact, petitioner had worked for H. B. Zachary long enough to qualify for its pension or profit-sharing plan in 1979 and for a paid vacation. Section 162(a)(2) provides for the allowance of a deduction for ordinary and necessary business expenses, including amounts expended for males and lodging "while away from home in the pursuit of a trade or business." Petitioner contends that Huntington was his tax home and that he is, therefore, entitled to a deduction for his travel expenses back and forth and his meals and lodging expenses while he was away from Huntington working in the Houston area. Respondent contends that petitioner's tax home was in the Houston area. A taxpayer's home, for purposes of section 162(a)(2), is generally the taxpayer's abode at or near his or her principal place of employment. , affg. a Memorandum Opinion of this Court. Underlying this definition is the premise that a person will normally choose to make his home near his work; if he chooses to live elsewhere for personal or family reasons, the travelling and living expenses that *385 he incurs as a result of that decision are not deductible. On the other hand, this underlying premise may not be true when the taxpayer's employment is "temporary" and not of "indefinite or indeterminate duration." , affg. in part and revg. and remanding in part . As stated in : A job may be considered indefinite or permanent if, under all the circumstances, it appears likely to last beyond a short period of time, even if there is no firm commitment that it will do so. Petitioner contends that his jobs with H. B. Zachary were temporary and that he is, therefore, entitled to deductions for his automobile, lodging, and meals expenses. We do not agree. It is true that each construction job on which petitioner was employed would eventually be completed and that petitioner would be compelled to seek work elsewhere. However, if the employment merely lacks permanence, it is "indefinite," not "temporary." The record is skimpy as to how long petitioner expected the various jobs to last, but he was repeatedly *386 employed by H. B. Zachary on construction projects over a period of several years. During those years, he had acquired sufficient tenure to qualify for participation in the H. B. Zachary pension or profit sharing plan and for a paid vacation. Although his employment with H. B. Zachary during 1979 and 1980 may not have been permanent, we think it was of indefinite or indeterminate duration. We must, therefore, hold that petitioner is not entitled to the disputed deductions for travel, meals, and lodging. 4. Addition to Tax
Section 6653(a) provides for the imposition of a 5-percent addition to tax if any part of the underpayment of tax is due to negligence or intentional disregard of the revenue laws. To support the imposition of the addition to tax, respondent cites the fact that petitioner filed joint returns in 1979 and 1980 with his former wife after they were divorced. Petitioner testified that his returns were prepared by a bookkeeping service and that the preparer assured him that "everything was legal and all right." We recognize that petitioner's and Paula's relationship during the tax years was unique. They obtained a decree of divorce but continued to live together *387 and make a home for their children. The income tax return forms signed by petitioner, however, required him to represent that he was married and that Paula was his spouse. Having gone through a divorce proceeding, although apparently an amicable one, he must have known that these representations were not accurate. His testimony as to his advice from his bookkeeper does not refer specifically to his filing status. We are compelled to sustain the addition to tax. Decision will be entered under Rule 155
Footnotes
1. Respondent concedes that petitioner is entitled to itemized deductions of $1,598.57 for 1979 and $1,139.82 for 1980, and that petitioner is entitled to a dependency exemption deduction for Paula Boykin for 1980. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. Although Texas, where petitioner and Paula lived, recognizes common law marriages, the essential elements of such a marriage are mutual agreement to be married, followed by cohabitation, and holding each other out to the public as husband and wife. . Petitioner specifically denied that he and Paula mutually agreed to be remarried after their divorce. Their relationship, therefore, does not qualify as a common law marriage under Texas law.↩
4. Although Paula had no income in 1980 when she was allowed as a dependent, the joint return for 1979 shows that she had income of $4,465.31 in 1979; in determining her taxable income, she is entitled to a $1,000 exemption for herself under sec. 151(b).↩